AO 91 (Rev. 11/11) Criminal Complaint

| | | | |
|---|---|---|---|
| AUSA: | David A. Gardey | Telephone: | (313) 226-9591 |
| Special Agent: | Andrew Donohue, DOL | Telephone: | (313) 226-3101 |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America
v.
Timothy Edmunds

Case: 2:21−mj−30505
Assigned To : Unassigned
Assign. Date : 10/27/2021
In re: SEALED MATTER (MAW)

**CRIMINAL COMPLAINT**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __2015 through 2021__ in the county of __Macomb__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 29 USC § 501(c) | Theft or Embezzlement of Union Funds |
| 29 USC § 439(a) | Failing to Maintain Required Union Records |
| 18 USC §§ 1956 & 1957 | Money Laundering |
| 29 USC § 439(b) | Filing False LM Reports |
| 29 USC § 439(c) | Making False Entries in a Union's Books and Records |

This criminal complaint is based on these facts:

See attached Affidavit

☐ Continued on the attached sheet.

*Complainant's signature*

Special Agent Andrew Donohue, US Dept of Labor-OIG
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: October 27, 2021

*Judge's signature*

City and state: Detroit, Michigan

Elizabeth A. Stafford, U.S. Magistrate Judge
*Printed name and title*

## Affidavit in Support of a Criminal Complaint and Request for an Arrest Warrant

### Introduction and Agent Background

1. I am a Special Agent with the U.S. Department of Labor, Office of Inspector General, Office of Investigations - Labor Racketeering and Fraud (**DOL-OIG/OI-LRF**). I have been employed within the U.S. DOL since September 2006. I am currently assigned to the Federal Bureau of Investigation's (**FBI**) Organized Crime and Labor Racketeering Task Force located in Detroit, MI.

2. I have graduated from the Criminal Investigator Training Program (**CITP**) and the Inspector General Investigator Training Program (**IGITP**) at the Federal Law Enforcement Training Center (**FLETC**). I have also received training in documentary and electronic evidence given by members of the Computer Crime & Intellectual Property Section (**CCIPS**) of the U.S. Department of Justice.

3. During my years at the Department of Labor, I have conducted numerous investigations into criminal violations of both Title 29 and Title 18 of the United States Code. During my years at the Department of Labor, I have conducted numerous investigations into criminal violations of both Title 29 and Title 18 of the United States Code. Through my training and investigative casework involving labor organizations, I am familiar with the operation, administration, and business practices of labor unions and the corporate employers with which they negotiate.

4. I make this affidavit based upon personal involvement in the subject criminal investigation, including review of financial, property and union records, interviews of witnesses, and law enforcement surveillances detailing a union embezzlement scheme perpetrated by **Timothy Edmunds**. I have also been provided with information and reports from other law enforcement agents and officials from the FBI and United Stated Department of Labor's Office of Labor-Management Standards (**OLMS**). This affidavit does not contain all of the facts developed to date in the underlying investigation and is being submitted for the purpose of establishing probable cause for the requested criminal complaint.

5. As a result of my participation in this investigation, I submit that there is probable cause to believe that **Timothy Edmunds (Edmunds)** has committed federal crimes, including theft or embezzlement of union funds (29 USC § 501(c)), Money

Laundering, (18 USC §§ 1956 & 1957),  Failing to Maintain Required Union Records (29 USC § 439(a)), Filing False LM Reports (29 USC § 439(b)), and making False Entries in a Union's Books and Records (29 USC § 439(c)).

## Executive Summary

6.      Between at least 2011 and 2020, Edmunds was the Financial Secretary-Treasurer of United Auto Workers (UAW) Local 412, located in Warren, MI. As an officer of Local 412, Edmunds was responsible to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the funds in accordance with the UAW constitution and Local 412 bylaws.   Instead, Edmunds systematically drained the Local 412 accounts of about $2 million by (1) using Local 412 credit cards for personal purchases, (2) cashing Local 412 checks into accounts he personally controlled, and (3) transferring cash from bone fide Local 412 accounts into accounts that he personally controlled. Once Edmunds converted the funds to his own personal use, he used the money to gamble, purchase luxury clothing, high-end automobiles, and firearms. To conceal his theft from other UAW officers and the Local 412 members, Edmunds created false bank statements and caused false LM reports to be filed with the U.S. DOL.

## Probable Cause

7.      The Labor-Management Reporting and Disclosure Act of 1959, as amended (**LMRDA**), grants certain rights to union members and protects their interests by promoting democratic procedures within labor organizations ( aka Unions). The LMRDA establishes, among other things, reporting and record keeping requirements for labor organizations as well as criminal penalties for the embezzlement or theft of union monies, funds, securities, or other assets.

8.      The U.S. DOL administers and enforces many provisions of the LMRDA. Unions subject to the LMRDA must file annual financial reports (Form LM-2, LM-3, or LM-4) with the DOL each year. Additionally, unions and union officers are required to maintain records on the matters required to be reported for five years after filing such reports.

9.      UAW Local 412 is a labor organization within the definition of the LMRDA. UAW Local 412's LM reports details that it is located in Warren, MI and represents about 2,600 members.  The union's website indicates that the local represents thousands of members employed by the automaker Stellantis N.V.  (Formerly Fiat Chrysler Automobiles (**FCA**)).  The local's members include many of those

employed at the following Stellantis facilities located within the EDMI: Sterling Stamping Plant, Mack Engine Plant, Warren Truck Assembly Plant, Warren Stamping Plant, and Jefferson Assembly Plant.  Local 412 officers are responsible for negotiating collective bargaining agreements both locally and nationally with Sellantis and have historically done so with its predecessor FCA.

10.     UAW Local 412's LM reports between 2011 and 2020 detail that Tim Edmunds is the Financial Secretary-Treasurer (FST) of the local.  Edmunds signs the union's LM reports as the union's chief financial officer. As such, federal law and internal UAW rules make Edmunds responsible for the accuracy of the information on the report and responsible for maintaining adequate records to verify, clarify, and explain union financial transactions.

11.     UAW Local 412 is governed by the UAW international constitution and the Local 412 bylaws. Article X and XI of the Local 412 bylaws detail that the FST position is an Officer and sits on the local union's executive board and joint council, which are the bodies responsible for running local 412.

12.     Through my experience in the department and my experience investigating the UAW, I know that the UAW uses a "voucher system" to maintain its financial records.  This system is detailed in the official UAW publication entitled "The UAW Financial Officers Manual."  That manual details that local union financial officers are required to receipt all income and prepare and maintain a voucher for all local union expenditures. Furthermore, the manual details the UAW's rigid written policy on the use of debit/credit cards that states that the cards may only be used for membership approved travel expenses (e.g., airfare, train tickets and hotel accommodations). Finally, the policy requires that receipts from the use of the debit card and the original itemized hotel or passenger receipt must be submitted and attached to a properly completed voucher.

13.     In August 2021, the DOL received information detailing a sizeable embezzlement that occurred at Local 412 involving Edmunds. Officials from the DOL subsequently interviewed auditors from the UAW international union who recently conducted an audit of Local 412. The auditors detailed an approximate $2 million dollar diversion of funds from UAW Local 412 attributable to Edmunds. The embezzlement took the following forms:

14.     The auditors uncovered about $1.5 million in unauthorized transfers made by Edmunds from bona fide Local 412 accounts to an unknown account at PNC bank between 2015 and the present.  Review of the union's records failed to disclose any

records that verified, clarified, or explained the transfers. The audit determined that the transfers were unauthorized and unknown to other Local 412 officers who should have had knowledge if the transfers were for legitimate union business.

15. The auditors reviewed rebate checks issued from the UAW International Union to UAW Local 412 and determined four checks issued between 2016 and 2020 totaling over $170,000 were deposited into the unknown PNC Bank account. Again, the union's records lacked documentation to verify, clarify, or explain or record the deposit.

16. The auditors uncovered about $142,000 in unauthorized charges on the local union debit card assigned to Edmunds. Many of the charges included purchases at high-end retailers like Louis Vuitton & Balenciaga, ATM withdrawals, child support payments, purchases at apple.com, and payments to/at casinos. All of the expenses are outside the UAW's credit card policy detailed above and vouchers were not maintained to verify, clarify, or explain their purpose.

17. The Auditors noted about $255,000 worth of cashier's checks drawn on the Local union's saving account between 2015 and 2018. Review of the checks by the auditors showed that they bore both the signature of Edmunds and Local 412 president Jerry Witt. When the auditors confronted Witt on the checks, he disavowed knowledge of the checks and told auditors that someone forged his signature on the checks.

18. During the audit, Edmunds provided the auditors with, what appeared to be, legitimate bank statements from Cornerstone bank reflecting one of the union's bona fide bank accounts. Those statements detailed that the account held over $850,000 in the account. However, a copy of the same statement obtained by the auditors directly from Comerica Cornerstone Bank reflected about $16,000 in the account, suggesting to auditors that the bank statements had been altered to conceal the activity detailed above.

19. With respect to filing false LM reports, I have reviewed LM-2 reports filed by UAW Local 412 and cannot find entries on those forms detailing the approximate $2 million in outlays detailed herein. I know through my experience working in the DOL that disbursements of that size and frequency should not be difficult to identify on the union's LM reports. I also know that local unions, like Local 412, use their union books and records to prepare the LM reports. As the UAW auditors have detailed that those records neglect to detail the payments in question, it stands to reason that the reports also fail to adequately report the transactions in question.

*The PNC Account*

20.     Investigating agents obtained records from the subject PNC Bank Account (**PNC # XXX326**) and determined that it is currently open and active and is held in the name "UAW Local 412 United Slate."  Signature cards provided by the bank indicate that Edmunds was a signatory on the account, but other Local 412 officers are not. You affiant recognizes this type of fund as a re-election fund often utilized by union officers for the purchase of election related materials and for gatherings associated with internal union officer elections.

21.     Title IV of the LMRDA specifically prohibits the comingling or use of union funds to support the candidacy of any particular union candidate. Therefore, the moving of UAW Local 412 funds from either (1) the bona fide Local 412 bank accounts or (2) diverting checks payable to Local 412 into a candidate's re-election fund is expressly prohibited by federal law.  UAW's own internal guidance also prohibits this practice.  In the UAW publication entitled *UAW Guide for Local Union Election Committees* states, in part:

> "Although local union funds may be used to pay for nomination and election notices and other expenses for conducting the election, federal law strictly prohibits the use of union and employer funds to promote the candidacy of any person in a local union officer election. This prohibition was adopted to prevent a current officer from being able to use the local union treasury to help finance an election campaign."

and

> "The restriction on the use of union funds applies to all moneys received by the union by way of dues, assessment, or similar levy."

22.     The legal and internal UAW prohibitions set forth above notwithstanding, review of PNC # XXX326 detailed to agents that a significant portion of the funds in the account were drawn down via checks payable to Edmunds. Between 2015 and the present, Agents noted over that over 100 checks payable to Edmunds totaling over $350,000 were negotiated out of the account. A selection of those checks appear below:

5





23.    Furthermore, records for PNC # XXX326 detail other anomalous behavior. For example, agents note the following financial transactions that appear to be devoid of any discernable legitimate union purpose insofar as they involve no known union credit cards or financial accounts:
- Over $800,000 in checks and Electronic "E-Checks" to American Express (**AMEX**) between 2015 and the present. Many of these checks and E-Checks are greatly in excess of $10,000. For example:
  - An ACH to AMEX on 5/23/2019 for $24,971.27
  - Check # 734 dated 7/15/2019 to AMEX for $26,301.50
  - Check # 736 dated 8/7/2019 to AMEX for $25,944.24
- Over $30,000 in ACH Transfers to Citi Card Online between 2015 and the present.
- Over $5,000 in ACH Transfers to Target and Walmart between 2016 and 2019.

24.    Finally, agents assert that the subsequent payments from PNC #XXX326 constitute money laundering transactions under both 18 USC §§ 1956 & 1957. More specifically, the diversion of UAW Local 412 assets to the PNC account constitutes the specified unlawful activity, that is, the embezzlement of union funds, whereas the subsequent checks and transfers therefrom are ways to conceal and/or disguise the source/nature of the transactions. Agents also specifically note the financial transactions in excess of $10,000 flowing out of the PNC account detailed above.

*Financial Activity of Timothy Edmunds: Gambling, Guns, and Cars.*



*Image of Edmunds obtained from Greektown Casino*

25.     UAW Auditors disclosed that Edmunds made over $30,000 in unauthorized ATM transactions using his Local 412 debit card at Greektown Casino between 2018 and 2020.  Agents subsequently obtained records from Greektown Casino that detailed Edmunds had a substantial presence at the casino between 2016 and 2020. Records provided by Greektown show that Edmunds was rated over 700 times by the casino during the 4-year period.   In total, Edmunds had cash buy-ins of over $1 million and put over $16 million in play while betting while being rated.

26.     Financial disclosures from Greektown Casino also detail that Edmunds was engaged in significant "Chip Walking" activity.  Greektown flagged almost $90,000 of uncashed casino chips that Edmunds left the casino with between 2016 and 2019. In one instance in 2016, Greektown reported that Edmunds accumulated over $25,000 in chips through playing table games, yet cashed out only $10,000 of said chips thereby avoiding a Currency Transaction Report (**CTR**) required to be filed by the Bank Secrecy Act (**BSA**). Based on over a decade of investigating labor racketeering and the criminals that engage therein, I know that casino chips are a favored method used to launder the proceeds of ill-gotten gains.

27.     Gun registration information obtained by law enforcement also suggests a flurry of firearm purchases made by Edmunds between 2020 and the present. Between that time, Edmunds registered at least10 firearms. The manufacturer's suggested retail price (**MSRP**) for the weapons range anywhere between $500 and $2,000 per firearm.

28.     Vehicle registration information obtained by law enforcement also suggest that Edmunds outlaid a significant amount of money for automobiles.  For instance, agents have identified the following vehicles registered to Edmunds.  As detailed below, many of these come with sizeable price tags:

- 2016 Jeep Grand Cherokee SRT with vehicle identification number (VIN) 1C4RJFDJ2GC322108, purchased on February 11, 2016 for $74,365.
- 2020 Jeep Grand Cherokee Trackhawk, VIN 1C4RJFN93LC372952, purchased on July 31, 2020 for $96,419.
- 2021 Dodge Durango, VIN 1C4SDJGJ9MC661998, purchased on July 9, 2021 for $76,491
- Edmunds also leased two 2021 Jeep Grand Cherokee Limited, VIN 1C4RJFBG8MC594066 and 1C4RJFBG3MC601828 in December 2020.
- While the vehicle purchases were financed, agents are aware that Edmunds' final payment for the 2016 Jeep Grand Cherokee was $11,532.83 in July 2021. Monthly payments up until the payoff were $1059. Monthly payments for the 2020 Jeep Cherokee and 2021 Dodge Durango are $1433 and $1294 respectively.

## Conclusion

29. Based on the forgoing, there is probable cause to believe that Timothy Edmunds has committed federal crimes, including theft or embezzlement of union funds (29 USC § 501(c)), Failing to Maintain Required Union Records (29 USC 439(a)), Money Laundering, (18 USC §§ 1956 & 1957), Filing False LM Reports (29 USC § 439(b)), and making False Entries in a Union's Books and Records (29 USC § 439(c)).

Respectfully submitted,

Andrew Donohue
Special Agent
U.S. Department of Labor –
Office of Inspector General

Sworn to before me and signed in my presence and/or by reliable electronic means.

Hon. Elizabeth A. Stafford
United States Magistrate Judge

Dated: October 27, 2021